IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   14-cv-00887-WYD-CBS

MICHAEL G. POITRA,

    Plaintiff,

v.

SCHOOL DISTRICT NO. 1 IN THE COUNTY OF DENVER
AND STATE OF COLORADO,
ANITA MARCHANT, Individually and as an employee of DENVER PUBLIC SCHOOLS,

    Defendants.

_____

**ORDER**
_____

I.    INTRODUCTION

    Plaintiff Michael Poitra initiated this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* claiming that his former employer, the School District No. 1 in the City and County of Denver (the "District") and Anita Marchant, Poitra's supervisor, discriminated against him on the basis of his race and gender.  Plaintiff also asserts claims of tortious interference with contract, retaliation, age discrimination and due process violations.

    This matter comes before the Court on Defendants' Motion for Summary Judgment (ECF No. 30) filed February 18, 2015.  Defendants claim that Plaintiff cannot establish a prima facie case of race, gender, or age discrimination and also claim that it had legitimate non-discriminatory reasons for terminating Plaintiff's employment. Defendants further argue that Plaintiff's due process claim, retaliation claim and tortious

interference with contract claim all fail as a matter of law. The motion is denied in part and granted in part.

This is an employment case. The Complaint alleges that Plaintiff is a forty-seven year old African American male who was employed by the Defendant District in vending and warehouse operations in the Enterprise Management Division of Denver Public Schools ("DPS") from February 2006 until April 2, 2013. (Compl. ¶¶ 12-46). He alleges that despite a promotion into a supervisory position, above-average performance evaluations, and commensurate pay raises each year, Defendant terminated Plaintiff's employment on April 2, 2013. (*Id.*) He further alleges that his termination was based on race, gender, and age discrimination.

II.     STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Equal Employment Opportunity Comm'n. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "When applying this standard, the court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (internal quotation marks omitted). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th

Cir. 1991). A "genuine" factual dispute is one "on which the jury could reasonably find for the plaintiff," and requires more than a mere scintilla of evidence. *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. 2505. A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Id.* at 248, 106 S.Ct. 2505.

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Justice v. Crown Cork & Seal Co.*, 527 F.3d 1080, 1085 (10th Cir. 2008). Once the moving party meets its burden, the burden shifts to the nonmoving party to show that a genuine issue remains for trial with respect to the dispositive matters for which he or she carries the burden of proof. *Nat'l Am. Ins. Co. v. Am. Re–Ins. Co.*, 358 F.3d 736, 739 (10th Cir. 2004); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). As to these matters, the nonmoving party may not rest on his or her pleadings but must set forth specific facts. Fed. R. Civ. P. 56(e)(2); *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. 1348; *Justice*, 527 F.3d at 1085.

III. ANALYSIS

    A. Race, Gender, and Age Discrimination Claims

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against employees and applicants for employment on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). "The ADEA states that it is unlawful for an employer 'to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age ....'" *Stone v. Autoliv*

*ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000) (quoting 29 U.S.C. § 623(a)(1)). To state a valid claim under Title VII or the ADEA, a plaintiff must prove by a preponderance of the evidence that the employer engaged in intentional discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). A plaintiff alleging discrimination on the basis of race, sex, or age may prove intentional discrimination through either direct evidence of discrimination (e.g. oral or written statements on the part of a defendant showing a discriminatory motivation) or indirect (i.e. circumstantial) evidence of discrimination. *See Daniels v. United Parcel Service, Inc.*, 701 F.3d 620, 627 (10th Cir. 2012). When a plaintiff does not have direct evidence of discrimination, a plaintiff may rely on indirect evidence by invoking the analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

In *McDonnell Douglas*, the Supreme Court "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases." *Hicks*, 509 U.S. at 504. When the *McDonnell Douglas* analysis is utilized, the burden of production shifts from plaintiff to defendant and back to plaintiff. *McDonnell Douglas*, 411 U.S. at 802. If a plaintiff establishes a prima facie case, then the burden of production shifts to the defendant to present evidence that it had a legitimate nondiscriminatory reason for its action. *Id.* at 802-03. If the defendant meets its burden of production, the plaintiff must then demonstrate that the defendant's proffered explanation is pretextual. *Id.* at 804. Evidence of pretext, plus the establishment of a prima facie case, is sufficient to avoid summary judgment, and plaintiff is not required to present direct evidence of an illegal discriminatory motive. *Reynolds v. School Dist. No. 1*, 69 F.3d 1523 (10th Cir. 1995).

Defendants' Motion for Summary Judgment asserts that it had a legitimate nondiscriminatory reason for terminating Plaintiff, including complaints received by a female co-worker that Plaintiff had engaged in inappropriate conduct toward her, and that Plaintiff cannot demonstrate pretext.  Defendants further assert that while Plaintiff may have disagreed with the complaints lodged against him, he was evasive and untruthful when questioned about the alleged misconduct.  Plaintiff asserts that he can demonstrate that the Defendants' reasons for terminating him were pretextual, through procedural irregularities in connection with his termination, through evidence that similarly situated employees were treated differently than him, and through evidence about Defendants' employment practices in regard to minorities.  Defendants' reply disputes that there were procedural irregularities associated with Plaintiff's termination and disputes that Plaintiff has otherwise shown pretext.

A plaintiff shows pretext in one of three ways: (1) with evidence that the defendant's stated reasons for the adverse employment action were false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.  *Plotke v. White*, 405 F.3d 1092, 1102-03 (10th Cir. 2005) (internal citations omitted).  A plaintiff's evidence can also allow for an inference that the "'employer's proffered non-discriminatory reasons [were] either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext).'"  *Id.* (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).  Evidence of pretext may

also include the use, by the employer, of subjective criteria in its employment decision. *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217-18 (10th Cir. 2002) (internal citations omitted).

I find that Plaintiff has demonstrated a prima facie case of discrimination (based on national origin, gender and age), and that he has demonstrated pretext. More specifically, Plaintiff has presented evidence of procedural irregularities involving the investigation surrounding his alleged misconduct which ultimately led to his termination and evidence that other similarly situated employees were treated differently. While Defendants may dispute some or all of this evidence, I find that there are genuine issues of material fact as to same. Evidence of pretext, plus the establishment of a prima facie case, is sufficient to avoid summary judgment, and the plaintiff is not required to present direct evidence of an illegal discriminatory motive. *Reynolds v. School Dist. No. 1*, 69 F.3d 1523 (10th Cir. 1995). Accordingly, I find that summary judgment is not proper on Plaintiff's asserted claims of discrimination based on race, gender and age.

B.   Retaliation Claim

Plaintiff's Equal Employment Opportunity Commission ("EEOC") filing did not include a charge of retaliation. Accordingly, Defendants argue that I lack jurisdiction over this claim because Plaintiff failed to exhaust his EEOC remedies.

To bring a claim under Title VII, a claimant must exhaust his administrative remedies as to each claim of discrimination or retaliation. *Shikles v. Sprint/United Management Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005). The initial step to exhaustion is the filing of a charge of discrimination with the EEOC. *Jones v. Runyon*, 91 F.3d

1398, 1399 n. 1 (10th Cir. 1996). The purposes behind the administrative exhaustion requirement are: "1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC the opportunity to conciliate the claims, which effectuates Title VII's goal of securing voluntary compliance." *Ingels v. Thiokol Corp.*, 42 F.3d 616, 625 (10th Cir. 1994).

Here, Plaintiff filed his Charge of Discrimination with the EEOC on May 6, 2013. He checked the boxes labeled "race", "color", "sex", and "age" as the basis for Defendants' discriminatory acts. Notably, the box labeled "retaliation" was unchecked. Further, there is nothing in the Plaintiff's EEOC charge that would have put the Defendants on notice that Plaintiff was alleging that his termination was based on retaliation for attending an April, 2012 meeting regarding employee concerns about discrimination by Defendant Marchant. Accordingly, I find Plaintiff failed to exhaust his administrative remedies with respect to his retaliation claim, thus, this claim is dismissed for lack of subject matter jurisdiction.

C.     Claim of Violation of Due Process Under 42 U.S.C. § 1983

Plaintiff also brings a claim under 42 U.S.C. § 1983 for violation of his due process rights against the Defendant District and Defendant Marchant individually. Plaintiff asserts that he was denied the property interest in his continued employment with the District without proper notice of the allegations against him and that Marchant did not follow DPS's sexual harassment policy, but instead employed her own personal, progressive discipline. Plaintiff also alleged that his liberty interests in his good name and reputation were violated when the Defendants published false statements about him during the course of his employment termination that foreclosed other employment

opportunities.

### 1. Property Interest

A plaintiff asserting a procedural due process claim must establish: (1) the existence of a constitutionally cognizable liberty or property interest; and (2) a deprivation of that interest without an appropriate level of process or procedural safeguards. *See Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006). However, "the range of interests protected by procedural due process is not infinite." *Bd. of Regents v. Roth*, 408 U.S. 564, 570, 92 S.Ct. 2701 (1972). To be constitutionally cognizable, "[a] property interest must be specific and presently enforceable." *Doyle v. Okla. Bar Ass'n*, 998 F.2d 1559, 1569 (10th Cir. 1993).

A public employee may possess a protected property interest in his employment if he has tenure, an explicit or implied contract for a fixed term of employment, or if "there is a clearly implied promise of continued employment." *Roth*, 408 U.S. at 577, 92 S.Ct. at 2701. Under Colorado law, absent these conditions, an employee is presumed to be an at-will employee and thus, can be terminated without cause or notice, and such termination does not give rise to a cause of action. *Rooker v. Ouray County*, 841 F. Supp. 2d 1212, 1217 (D.Colo. 2012). Here, while Plaintiff claims he had a property interest in his continued employment with DPS, he fails to sufficiently allege a source from which this interest stems. Plaintiff fails to show the existence of an individual employment contract. Instead, Plaintiff argues that the District failed to notify him that he was an at-will employee or that "union rules" did not apply to his supervisory position. Plaintiff fails to provide authority in support of his argument that his reliance on "union rules" transformed his employment into something other than at-will. Given that

Colorado employment is presumed to be at-will, I find that Plaintiff was an at-will employee of the District, which means he did not have a property interest in his continued employment. Without a property interest in his continued employment, Plaintiff's claim that he was not given appropriate due process prior to his termination also fails. *Id.* at 1220-21 (holding that "an entitlement to nothing but procedure cannot be the basis for a property interest") (internal quotations omitted). Furthermore, the Tenth Circuit has explained that

> [t]his is because process is not an end in itself, but instead serves only to protect a substantive interest to which the individual has a legitimate claim of entitlement. Although detailed and extensive procedural requirements may be relevant as to whether a separate substantive property interest exists the procedures cannot themselves constitute the property interest.

*Teigan v. Renfrow*, 511 F.3d 1072, 1081 (10th Cir. 2007) (internal quotations and citations omitted). Accordingly, I find that Plaintiff has failed to show a material, factual dispute as to whether he had a protected property interest. Therefore, summary judgment is appropriate on this aspect of his due process claim.

        2.    <u>Liberty Interest</u>

Plaintiff also contends that he was deprived of a protected liberty interest when the Defendants allegedly caused "damage to his good name, honor, and loss of reputation in the community." (Compl. ¶ 56). Each person has a liberty interest in his "good name and reputation as it affects his property interest in continued employment." *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994). To establish a claim for violation of his liberty interest, Plaintiff must show that the Defendants made statements that: (1) impugned his good name, reputation, honor, or integrity; (2) were false; (3) occurred in the course of terminating Plaintiff's employment and foreclosed other

employment opportunities;[1] and (4) were published.  *Renaud v. Wyoming Dept. Of Family Services*, 203 F.3d 723, 727-28 (10th Cir. 2000) (citing *Workman*, 32 F.3d at 480-81).  "These elements are not disjunctive, all must be satisfied to demonstrate deprivation of the liberty interest."  *Id.* at 481.  While there may be triable issues of fact as to whether the alleged statements were false, I find that Plaintiff cannot establish a genuine issue of material fact regarding elements three and four—whether the statements foreclosed other employment opportunities or were published.

First, Plaintiff was hired by another employer less than a year after DPS terminated his employment.  Additionally, Plaintiff was offered interviews and job positions by other employers with whom he had sought employment.

Second, to satisfy the publication requirement, a plaintiff must show that the allegedly false and stigmatizing statements were made public.  *See Rich v. Secretary of Army*, 735 F.2d 1220, 1227 (10th Cir.1984) ("To impinge on the plaintiff's liberty interest, the stigmatizing information must be made public by the offending governmental entity.").  Here, Plaintiff appears to admit that he is without evidence that the Defendants published the allegedly false statements.  Instead, he claims that "it is reasonable to assume that the injurious information will be published in the job search process. ... So, although the employer itself is not directly publishing the information it is directly culpable for the inevitable disclosure and damage." (Resp. at 25).  Plaintiff fails to cite

---

[1] The Plaintiff notes that there is some dispute about whether the third element should be disjunctive or conjunctive.  However, based on my review of Tenth Circuit authority, I conclude that the third element is conjunctive.  *See Darr v. Town of Telluride, Colo*, 495 F.3d 1243, 1255 (10th Cir. 2007); *Renaud v. Wyo. Dept. of Family Services*, 203 F.3d 723, 728 (10th Cir. 2000).

any authority supporting his assertion that if the Defendants indirectly published the injurious information, this constitutes publication in the liberty interest analysis. Accordingly, I find that these statements were not published, and summary judgment is appropriate on this aspect of Plaintiff's due process claim.

### D.     Claim for Tortious Interference With Contract

Finally, Plaintiff asserts a state law tort claim for tortious interference with contract against Defendant Marchant.

The Colorado Governmental Immunity Act ("CGIA") governs circumstances under which a person may maintain a tort action against the State of Colorado, its political subdivisions, instrumentalities, and employees. *See Mesa Cnty. Valley Sch. Dist. No. 51 v. Kelsey*, 8 P.3d 1200, 1203 (Colo. 2000). The CGIA provides that public entities are immune from all claims that lie or could lie in tort, unless the claim falls within one of the eight limited areas for which immunity has been waived. *See* Colo. Rev. Stat. §§ 24-10-105 and106. The CGIA also provides similar immunity to public employees. However, public employees are not immune from tort claims if their acts or omissions causing the injury were willful and wanton. Colo. Rev. Stat. § 24-10-118. The CGIA defines "public employee" to include officers and employees of public entities. Thus, I find that Defendant Marchant is a public employee within the meaning of the CGIA. *See* Colo. Rev. Stat. § 24-10-103(4)(a).

Although the CGIA does not define the term "willful and wanton," the Colorado Supreme Court looked to the definition of "willful and wanton" for purposes of exemplary damages ("conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the

rights and safety of others, particularly the plaintiff") and the definition of "willful and wanton" used in the automobile guest statute ("wholly disregardful of the rights, feelings and safety of others . . . at times even imply[ing] an element of evil"). *Moody v. Ungerer*, 885 P.2d 200, 205 (Colo. 1994) (internal quotations and citations omitted).

Here, Defendant Marchant argues that there is simply no evidence to support a finding that she engaged in willful and wanton conduct in conducting an investigation into the allegations of Plaintiff's misconduct and ultimately terminating his employment. In response, Plaintiff contends that Marchant had "the terminating authority" and "initiated the investigation" that ultimately led to Plaintiff's termination. (Resp. at 34). Plaintiff also argues that Marchant "was the one person who could have changed the entire course of events by counseling [Plaintiff] to let him know of [his co-worker's] concerns." (Resp. at 34). Based on my careful review, I conclude that the evidence before me is insufficient to support a finding of willful and wanton conduct. It is undisputed that a co-worker complained about Plaintiff's "inappropriate" conduct toward her. Marchant, as Plaintiff's direct supervisor, learned of these complaints and initiated an investigation, which included alerting the District's Human Resources Department. This series of events, even taken in the light most favorable to the Plaintiff, simply does not rise to the level of purposeful conduct done "heedlessly and recklessly, without regard to consequences[.]" *See Moody*, 885 P.2d at 205. Viewing Plaintiff's conduct as a whole, I find that Marchant, as Plaintiff's supervisor, had reason to be concerned about Plaintiff's alleged "inappropriate" conduct toward a female co-worker. Accordingly, I find that Marchant's actions in initiating the investigation into Plaintiff's alleged misconduct and ultimately terminating his employment cannot be the basis to

overcome governmental immunity under the CGIA. For this reason, summary judgment in favor of the Defendant Marchant based on governmental immunity is appropriate on this claim.

To the extent that Plaintiff asserts a tortious interference claim against the District, he must prove: (1) he had either a valid existing contract with a third party; (2) the Defendants induced or otherwise caused the third party to breach the contract or not enter into the contractual relation; and (3) the Defendants did so intentionally and via improper means. *See Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1195–96 (Colo. App. 2009); *Telluride Real Estate Co. v. Penthouse Affiliates, LLC*, 996 P.2d 151 (Colo. App. 1999). Because I find that Plaintiff has failed to provide sufficient evidence that he had an actual contract with Defendants, his claim fails as a matter of law. *See William v. Burns*, 540 F. Supp. 1243, 1251 (D.Colo. 1982) (granting motion for summary judgment because plaintiff failed to present evidence of an existing contract). Therefore, the District's Motion for Summary Judgment is granted as to this claim.

IV.     CONCLUSION

Based on the foregoing, it is

ORDERED that Defendants' Motion for Summary Judgment (ECF No. 30) is **GRANTED** as to Plaintiff's retaliation claim, due process claim, and tortious interference with contract claim. The motion is **DENIED** as to Plaintiff's claims of discrimination based on race, gender and age.

Dated: September 11, 2015

BY THE COURT:

*/s/ Wiley Y. Daniel*
Wiley Y. Daniel
Senior United States District Judge

-14-