IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 14-cv-00887-WYD-CBS

MICHAEL G. POITRA,
        Plaintiff,
v.

SCHOOL DISTRICT NO. 1 IN THE COUNTY OF DENVER AND
STATE OF COLORADO, and
ANITA MARCHANT, individually and as an employee of DENVER PUBLIC SCHOOLS,
        Defendants.

_____

## REPORT AND RECOMMENDATION REGARDING
## PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

_____

Magistrate Judge Shaffer

        THIS MATTER comes before the court on Plaintiff Michael G. Poitra's Motion for

Leave to Amend Complaint (doc. # 49), filed on June 3, 2015.  Plaintiff's proposed First

Amended Complaint seeks to assert a new Fourth Claim for Relief for "Wrongful Discharge

based on Violation of Public Policy."  On June 11, 2015, Defendants School District No. 1 and

Anita Marchant filed a Response to Motion for Leave to Amend Complaint (doc. # 52), which

was followed by Plaintiff Poitra's Reply on Motion for Leave to Amend Complaint (doc. #53),

filed on June 22, 2015.

        After carefully considering the parties' briefs, the entire court file and the applicable case

law, the court entertained oral argument on the instant motion during a hearing on July 21, 2015.

At the conclusion of that hearing, this court advised the parties that it would be recommending

that the district court deny Plaintiff's Motion for Leave to Amend Complaint.  This Report and

Recommendation explains my reasoning.

1

## FACTUAL BACKGROUND

A brief recitation of salient facts will place the instant motion in context. Mr. Poitra was terminated from his position with the Denver Public Schools on April 2, 2013. This action commenced on March 27, 2014, with the filing of a Complaint and Jury Demand (doc. #1) that asserted claims for tortious interference with contract (Claim One), violation of 42 U.S.C. § 1983 (Claim Two), discrimination on the basis of race under Title VII (Claim Three), retaliation pursuant to 42 U.S.C. § 2000e-3(a) (Claim Four), gender discrimination under Title VII (Claim Five), and violation of the Age Discrimination in Employment Act (Claim Six). In his Complaint, Plaintiff alleged that he had "exhausted all administrative remedies and this action is timely filed." *See* Complaint, at ¶11.

Defendants filed their Answer (doc. #8) on June 1, 2014, in which they denied Mr. Poitra's assertion that he had exhausted all administrative remedies. As a separate affirmative defense, Defendants averred that "[s]ome or all of Plaintiff's claims are barred because he failed to exhaust administrative remedies." The parties' pleading clearly raised exhaustion as a disputed threshold issue in this action.

It also appears to be undisputed that Mr. Poitra filed a Charge of Discrimination with the Colorado Civil Rights Division on May 6, 2013. That charging document alleged that Plaintiff had been subjected to discrimination on the basis of race, color, age and sex. *See* Exhibit G (doc. #30-7), attached to Defendants' Motion for Summary Judgment. Notably, Mr. Poitra did not check the box for "retaliation" and the narrative portion of his Charge of Discrimination did not describe or specifically refer to retaliatory conduct. On July 31, 2013, Mr. Poitra's counsel sent a preservation demand letter to defense counsel, insisting, in part, that Denver Public Schools preserve "any evidence which may be relevant to the claims in the contemplated litigation of this

matter," including claims for gender discrimination, age discrimination, retaliation, and constitutional violations under 42 U.S.C. § 1983.  In the same letter, Plaintiff's counsel alluded to possible "additional state law claims which are supplemental to the federal causes of action, but which arise from the same factual basis, that being his pretextual and discrimination termination from employment by DPS."  *See* Exhibit D (doc. #49-4) attached to Plaintiff's Motion for Leave to Amend Complaint.  By July 31, 2013, Plaintiff's counsel certainly believed her client had a viable Title VII retaliation claim, but she also held open the possibility of asserting ancillary or parallel state law claims.

This court held a Fed. R. Civ. P. 16 scheduling conference on June 13, 2014, at which time I set a deadline of July 27, 2014 for moving to join additional parties or to amend pleading. The court also set a discovery cutoff of December 6, 2014 and a dispositive motion deadline of January 15, 2015.[1]  All of those deadlines had been proposed by the parties and were not changed in the scheduling order I entered.  In that scheduling order, counsel stated that the parties had completed their Fed. R. Civ. P. 26(a)(1) disclosures on or before June 6, 2014.  Rule 26(a)(1)(A)(ii) requires a party to provide "a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, control and may use to support its claims or defenses."  Given the obvious importance of the exhaustion issue in light of the Defendants' Answer, it is reasonable to presume that Plaintiff's counsel would have produced any documents substantiating her client's claim of exhaustion or immediately initiated steps to secure that critical documentation.  *Cf. Tolerico v. Home Depot*, 205 F.R.D. 169, 175 (M.D. Pa. 2002) (noting that documents on which

---

[1]At the parties' request, I subsequently extended the discovery cutoff to January 5, 2015 and the dispositive motion deadline to February 18, 2015.

plaintiff based her claim of exhaustion "should have been part of [her] initial disclosures under Rule 26(a)(1)).[2]

On September 3, 2014, approximately three months after the Rule 16 scheduling conference, Plaintiff's counsel contacted an EEOC representative inquiring about an "amended charge" that her client may have submitted to the EEOC prior to commencing the instant litigation. In that email, counsel conceded that "unless we have a retaliation charge, we may have trouble with the retaliation claim in the pending lawsuit." *See* Exhibit C (doc. #49-3) attached to Plaintiff's Motion for Leave to Amend Complaint. After some delay in receiving a response from her EEOC contact, Plaintiff's counsel sent another inquiry on October 17, 2014, asking "did you find the amended charge with the retaliation charge added for Mr. Poitra." *Id.* On December 10, 2014, counsel again impressed upon her EEOC contact the need for additional information. Counsel explained that "[w]e are approaching the deadline in our federal case for the dispositive motions and I want to be able to provide the amended retaliation charge to DPS." *Id.* On December 11, 2014, the EEOC advised Mr. Poitra's attorney that no amended charge asserting retaliation against the Plaintiff had been located in their files. *Id.*

Defendants filed a Motion for Summary Judgment (doc. # 30) on February 18, 2015, asserting in part that Mr. Poitra's claim for retaliation under Title VI failed as a matter of law because he had not exhausted his administrative remedies regarding that claim. Defendants also argued that Plaintiff could not demonstrate that he engaged in protected activity, which is an essential element for a retaliation claim. Plaintiff filed a Revised Response to Defendant's Motion for Summary Judgment (doc. # 36) on April 1, 2015. In his Revised Response, Mr.

---

[2]Under Fed. R. Civ. P. 26(g)(1), counsel would have certified "to the best of [her] knowledge, information, and belief formed after a reasonable inquiry," that her client's Rule

Poitra requested an "opportunity to supplement his complaint and substitute a claim for wrongful termination" in the event "the Court determines that the administrative remedies for the Title VII retaliation claim have not been met." Plaintiff requested "ten days within which to file his supplemented complaint should summary judgment as to the retaliation claim be granted."

In the parties' Final Pretrial Order (doc. # 45) filed with the court on April 30, 2015, Mr. Poitra indicated that he "will be filing a motion to supplement his complaint and is contemplating dismissal of a claim." Plaintiff filed the instant motion to amend approximately a month later, on June 3, 2015. Judge Daniel entered an Order (doc. # 55) on September 11, 2015, granting in part and denying in part Defendants' Motion for Summary Judgment. The district court held, in pertinent part, that Mr. Poitra's retaliation claim must be dismissed for lack of subject matter jurisdiction based on his failure to exhaust his administrative remedies with respect to that claim.[3] Trial is set to commence in this case on January 12, 2016.

## ANALYSIS

While Plaintiff Poitra seeks relief pursuant to Fed. R. Civ. P. 15(a), his motion to amend was filed well beyond the July 27, 2014 deadline established in the scheduling order of June 13, 2014. Accordingly, the court must consider the interplay between Rule 15(a) and Fed. R. Civ. P. 16(b)(4). I am well aware that the Tenth Circuit "has not yet considered whether Rule 16(b)(4) must be met when motions to amend pleadings would necessitate a corresponding amendment of scheduling orders." *See United States ex rel. Richie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009). However, lower courts in the Tenth Circuit repeatedly have looked to

---

26(a)(1) disclosure was "complete and correct as of the time it [was] made."
   [3]Judge Daniel's Order also granted Defendant's motion as to the due process claim and the claim for tortious interference with contract. This action will proceed to trial on Mr. Poitra's claims of discrimination based on race, gender and age.

Rule 16(b)(4) when a party seeks leave to amend pleadings after the deadline for amending pleadings has passed. *See, e.g., Philippus v. Aetna Health, Inc.*, 2010 WL 148282, at *2-3 (D. Colo. 2010); *Texas Instruments, Inc. v. BIAX Corp.*, 2009 WL 3158155, at *1-2 (D. Colo. 2009); *Jenkins v. FMC Technologies, Inc.*, 2009 WL 1464416, at *1-2 (D. Colo. 2009); *Dias v. City and County of Denver, Colorado*, 2007 WL 4373229, at *2-3 (D. Colo. 2007). *See also Capital Solutions LLC v. Konica Minolta Business Solutions USA, Inc.*, 2009 WL 3711574, at *8 (D. Kan. 2009) and cases cited therein.

I also am persuaded by the analysis set forth in *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709 (8th Cir. 2008). In that case, the defendant moved to amend its answer to plead a new affirmative defense more than seventeen months after the deadline for amending pleadings. The appellate court reversed the jury verdict in favor of the defendant after concluding that the trial court abused its discretion by granting the belated motion to amend in the absence of "good cause" under Rule 16(b)(4). As the court noted in *Sherman,* Rule 16(b) specifically requires the trial court to "'issue a scheduling order' which 'must limit the time to join other parties, amend the pleadings, complete discovery, and file motions.'" *Id.* at 715.

> When a party seeks to amend a pleading after the scheduling deadline for doing so, the application of Rule 16(b)'s good-cause standard is not optional. To permit district courts to consider motions to amend pleadings under Rule 15(a) without regard to Rule 16(b) "would render scheduling orders meaningless and effectively . . . read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure."

*Id.* at 716 (quoting *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1988)). In this case, the court need not address the applicability of Rule 15(a) unless it first finds that Plaintiff has satisfied the requirements of Rule 16(b)(4).

Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and

6

with the judge's consent." *See* Fed. R. Civ. P. 16(b)(4). *See also* D.C.COLO.LCivR 16.1 ("The schedule established by a scheduling order shall not be modified except upon a showing of good cause and by leave of court"). This "good cause" requirement reflects the important role a scheduling order plays in the court's management of its docket. *Cf. Washington v. Arapahoe County Department of Social Services,* 197 F.R.D. 439, 441 (D. Colo. 2000) (noting that a "scheduling order is an important tool necessary for the orderly preparation of a case for trial"). *See also Rent-a-Center, Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 101 (S.D.N.Y. 2003) ("scheduling orders are designed to offer a degree of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed and the case will proceed"); *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995) ("a scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril").

The "good cause" standard requires the moving party to show that despite its diligent efforts, it could not have reasonably met the scheduled deadline. *See Pumpco, Inc. v. Schenker International, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001).

> Rule 16(b)'s "good cause" standard is much different than the more lenient standard contained in Rule 15(a). Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts. In other words, this court may "modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension." Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

*Colorado Visionary Academy v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000) (quoting *Dilmar Oil Co., Inc. v. Federated Mutual Ins. Co.*, 986 F. Supp. 959 (D.S.C. 1997)).

Assuming the Rule 16(b) "good cause" standard is met, the court then must consider the balancing test mandated by Fed. R. Civ. P. 15(a).  I readily acknowledge that the underlying purpose of Rule 15(a) is to facilitate a decision on the merits.  *Bob Marshall Alliance v. Lujan*, 804 F. Supp. 1292, 1298 (D. Mont. 1992) (noting that the court's exercise of discretion must "be guided by the underlying purpose of Rule 15 – to facilitate decision on the merits, rather than on the pleadings or technicalities").  To that end, motions to amend should be freely granted when justice requires.  *See, e.g., Bellairs v. Coors Brewing Co.*, 907 F. Supp. 1448, 1459  (D. Colo. 1995).

In considering the "needs of justice," however, the court must take into consideration the interests of all parties.

> Several factors are typically considered by the courts in determining whether to allow amendment of a complaint.  These include whether the amendment will result in undue prejudice, whether the request was unduly and inexplicably delayed, was offered in good faith, or that the party had sufficient opportunity to state a claim and failed.  Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial.

*Las Vegas Ice & Cold Storage Co. v. Far W. Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990).  *See also Arkansas-Platte & Gulf Partnership v. Dow Chemical*, 886 F. Supp. 762, 765 (D. Colo. 1995) ("Leave to amend should be freely given based on the balancing of several factors, including futility, delay, bad faith, dilatory motive, repeated failure to cure deficiencies, and prejudice to the opposing party.").  A motion to amend must be left to the sound discretion of the district court.  *State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984).

The instant motion was filed more than ten months after the deadline for amending the pleadings, approximately five months after the close of discovery, nearly four months after

8

Defendants filed their motion for summary judgment, and 26 days after the final pretrial conference.  It does not strain logic to suggest that Plaintiff's counsel must have understood that exhaustion of all her client's Title VII claims would be a critical issue in this case.  Yet, counsel apparently did not initiate inquiries with the EEOC regarding exhaustion of the retaliation claim until three months after the deadline for amending the complaint and well after the start of discovery.  More remarkable is the fact that even after counsel was told that the EEOC could not find an amended charge asserting retaliation, she waited more than five months to file the pending motion to amend.  *Cf. Creamer v. Laidlaw Transit, Inc.*, 86 F.3d 167, 171 (10th Cir. 1996) (finding no abuse of discretion where the trial court denied plaintiff's belated motion to add new state law causes of action to her federal claim for sexual harassment; the court noted that plaintiff had moved to add new claims for relief approximately 45 days after the close of discovery and had not demonstrated good cause for that delay; the court also noted that if the new motion to amend had been granted, defendant would have filed a second motion for summary judgment addressing the new claims).[4]  *See also Voorhis v. BOK Financial Corp.*, No. 13-cv-197-CVE-TLW, 2013 WL 5937395, at *4 (N.D. Okl. Nov. 4, 2013) (denying plaintiff's motion to amend to assert a new state law claim that was purportedly "based on the same set of facts as her conversion and equitable accounting claims;" after noting that plaintiff had moved to amend in the wake of defendant's motion for summary judgment, the court observed that

_____

[4]In opposing Plaintiff's motion to amend, Defendants argue that a state law claim for wrongful discharge in violation of public policy would be futile because such a claim cannot be brought against non-employer defendants and because political subdivisions, like School District No. 1, are immune from tort claims like wrongful termination.  *See* Defendants' Response to Motion for Leave to Amend Complaint (doc. # 52), at 2-3.  While Plaintiff takes issue with this futility argument, it seems reasonable to assume that an amended complaint would prompt another round of dispositive motion briefing, which would almost certainly place the January 11, 2016 trial date in jeopardy.

"[p]laintiff has cited no authority suggesting that a motion to amend to add new claims can be deemed timely because a party realizes after reading the opposing party's motion for summary judgment that an existing claim will likely be unsuccessful").

"A litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend." *In re Enron Corporation Securities, Derivative & ERISA Litigation*, 610 F. Supp. 2d 600, 653 (S.D. Tex. 2009) ( "where plaintiffs 'deliberately chose to delay amending their complaint, . . . a busy court need not allow itself to be imposed upon by the presentation of theories seriatim'"). *See also Transamerica Life Insurance Co. v. Lincoln National Life Insurance Co.*, 590 F. Supp. 2d 1093, 1100-1105 (N.D. Iowa 2008) (concluding that plaintiff's belated motion for leave to amend was not prompted by a change in the law, but rather reflected "second guessing" of earlier tactical decisions to forego those claims; held that plaintiff knew all the circumstances giving rise to the belatedly proposed claim well before the deadline for leave to amend). The Federal Rules of Civil Procedure will not necessarily protect parties from the unforeseen consequences of their own litigation strategy. *See Martinez v. Target Corp*, 2010 WL 2616651, at *4 (10th Cir. 2010) (finding no abuse of discretion in the trial court's denial of plaintiff's untimely motion for leave to amend; found inadequate plaintiff's explanation that she did not move to amend because she thought her FMLA claim was premature). While this court is not oblivious to the legal and practical implications of this Report and Recommendation, my analysis under Rule 16(b)(4) must focus on the due diligence of the moving party. Mr. Poitra's motion to amend falls short under that standard.

This court has an independent responsibility for case management. *Cf. Beller ex rel. Beller v. United States*, 221 F.R.D. 689, 693 (D.N.M. 2003) (the case management elements of

Rule 16 are based on the "recognition that cases can move efficiently through the federal system only when courts take the initiative to impose and enforce deadlines"). As the Tenth Circuit has acknowledged, courts have a "high duty to insure the expeditious and sound management of the preparation of cases for trial."

> While on the whole Rule 16 is concerned with the mechanics of pretrial scheduling and planning, its spirit, intent and purpose is clearly designed to be broadly remedial, allowing courts to actively manage the preparation of cases for trial . . .

*Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1555 (10th Cir. 1996) (quoting *Matter of Sanction of Baker*, 744 F.2d 1438, 1440 (10th Cir. 1984)). Both the court and Defendants are entitled to expect that by a date certain, Plaintiff's claims will be fixed and the case will proceed on that basis. Based upon a lack of diligence in pursuing his claim for wrongful termination in violation of public policy, I conclude that Mr. Poitra has not sustained his burden under Rule 16(b)(4).

The court would reach the same result under Rule 15(a). *See, e.g., Peresypa v. Jiminy Peak Mountain Resort, Inc.*, 653 F. Supp. 2d 131, 135 (D. Mass. 2009) (in denying plaintiff's motion to amend to add claims for breach of warranty and gross negligence, the court noted that the motion to amend came more than one year after plaintiffs filed their complaint, several months after the close of non-expert discovery, and nearly a month after defendant filed its motion for summary judgment; held that given plaintiff's lack of diligence in pursuing the new claims, the motion to amend was simply too late). *Cf. Centra, Inc. v. Chandler Ins. Co., Ltd.,* 229 F.3d 1162, at *11 (10th Cir. 2000) (noting that with the passage of time, "the party seeking leave to amend must justify that request by more than invocation of the concept of [Fed.R.Civ.P. 15(a)]'s liberality").

The court cannot find that Plaintiff's wrongful termination claim is timely under Rule

15(a).  *See Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1495 (10th Cir. 1995) ("untimeliness

in itself can be a sufficient reason to deny leave to amend, particularly when the movant provides

no adequate explanation for the delay"); *Deghand v. Wal-Mart Stores, Inc.,* 904 F. Supp. at 1221

(holding that courts may deny leave to amend for untimeliness or undue delay without a showing

of prejudice to the opposing party).  As noted previously, the instant motion was filed more than

ten months after the deadline for joining new parties, well after the close of discovery and largely

in response to Defendants' motion for summary judgment.  *Cf. Hedrick v. Honeywell, Inc.*, 796

F. Supp. 293, 295 (S.D. Ohio) (plaintiff denied leave to file second amended complaint alleging

fraud where discovery had closed and defendant had filed motion for summary judgment).  The

court does not find that Plaintiff has provided a compelling explanation for his delay in asserting

this claim.

## CONCLUSION

For the foregoing reasons, this court RECOMMENDS that Plaintiff' Poitra's Motion for

Leave to Amend Complaint (doc. # 49) be DENIED.

## Advisement to the Parties[5]

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the District Court on notice of the basis for the objection will

---

[5]  *See* <u>Pedro v. Armour Swift-Eckrich</u>, 118 F. Supp.2d 1155, 1157 (D. Kan. 2000) (suggesting that an
order denying a motion to amend may be dispositive for purposes of Fed. R. Civ. P. 72 and 28 U.S.C. §
636(b)(1) if the order effectively removes a claim or defense from the action).

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review." *United States v. One Parcel of Real*

*Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir.

1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the

Magistrate Judge's proposed findings and recommendations and will result in a waiver of the

right to appeal from a judgment of the district court based on the proposed findings and

recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir.

1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite

the lack of an objection does not preclude application of the "firm waiver rule"); *International*

*Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th

Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant

had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d

1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to

appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122

(10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED this 21st day of October, 2015.

BY THE COURT:


s/ Craig B. Shaffer
United States Magistrate Judge