IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00887-WYD-CBS

MICHAEL G. POITRA
     Plaintiff,
v.

SCHOOL DISTRICT NO. 1 IN THE COUNTY OF DENVER AND STATE OF COLORADO,
ANITA MARCHANT, Individually and as an employee of DENVER PUBLIC SCHOOLS
     Defendants.

---

## ORDER REGARDING DEFENDANT'S MOTION FOR SANCTIONS

---

Magistrate Judge Shaffer

     Rarely, if ever, do "two wrongs make a right."  The court's challenge, in the discovery or case management context, comes in untying the Gordian knot that the two wrongs create.  This case presents just such a problem.

     Pending before the court is Defendant School District No. 1's (hereinafter "DPS") Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(a)(3)(A)[1] (doc. #58), filed on November 16, 2015. This motion seeks an order striking Rebecca Ortega, James Woods, Kao Vang and Ben Gallegos from Mr. Poitra's list of trial witnesses as set forth in the Fed. R. Civ. P. 16(d) Final Pretrial Order, based on Plaintiff's failure to properly and timely disclose those individuals pursuant to Fed. R. Civ. P. 26(a)(1) and (e).  The District also insists that it "should be awarded its reasonable attorney's fees incurred as a result of having to file the instant motion."

---

[1] During a motion hearing on December 16, 2015, defense counsel conceded that the caption on the pending motion incorrectly references Rule 37(a)(3)(A), and should more properly invoke Fed. R. Civ. P. 37(c)(1).

Plaintiff Michael G. Poitra filed his Response to Motion for Sanctions (doc. #62) on December 1, 2015.  Mr. Poitra's counsel argues that "listing . . . the four employees as witnesses on the pretrial order complies with the disclosure requirements pursuant to Rule 26(e)(1) as the individuals were discussed during depositions of both the Plaintiff and DPS management, were listed in interrogatory responses, and were the subject of documents provided by DPS, thus making them otherwise known to the Defendant."  In the alternative, Plaintiff argued that any prejudice arising from the inclusion of these individuals on Mr. Poitra's witness list "nine months prior to trial could be cured by interviewing those employees at some point during the nine months which effectively removes any surprise and cures the prejudice."  Moreover, Mr. Poitra insists that he "did not willfully or in bad faith fail to formally disclose witnesses already known to the Defendant."

Defendant DPS filed a Reply in Support of Motion for Sanctions (doc. #69) on December 8, 2015, which largely reiterated the arguments advanced in its initial motion.

This court set the matter for a hearing on December 16, 2015.  At that time, counsel for Defendant advised that her client's motion for sanctions now was only directed to Ms. Rebecca Ortega, since Mr. Poitra had agreed to remove the other three individuals from his "final" witness list.  In response to questioning from this court, Plaintiff's counsel conceded that she had never formally disclosed Ms. Ortega pursuant to Rule 26(a)(1).  However, counsel argued that Ms. Ortega had been referenced in Mr. Poitra's December 16, 2015 deposition and in Ms. Anita Marchant's deposition on January 5, 2015, thereby satisfying the supplementation requirement in Rule 26(e)(1)(A).  Plaintiff's counsel also suggested that Ms. Ortega's inclusion in the Final Pretrial Order sufficed to give Defendant proper notice, in light of Fed. R. Civ. P. 26(a)(3)(A)

and (B), which requires a party to disclose the witnesses they expect to use at trial "at least 30 days before trial." At the court's request, the parties provided a complete copy of Mr. Poitra's deposition transcript, as well as copies of their original Rule 26(a)(1) disclosures and any written supplemental disclosures.

The court has carefully reviewed the parties' briefs and related exhibits, the entire court file, and the applicable case law. I have also considered the arguments of counsel during the December 16 hearing. For the following reasons, I will grant Defendant's motion and strike Ms. Ortega from Mr. Poitra's witness list.[2]

## PROCEDURAL BACKGROUND

A brief factual recitation is sufficient to place the instant motion in context.

Mr. Poitra commenced this litigation on March 27, 2014 with the filing of a Complaint (doc. #1) that generally alleged that he was the victim of employment discrimination and tortious conduct while employed by the Denver Public Schools. Throughout the relevant time period, Anita Marchant was Mr. Poitra's supervisor. The Complaint asserts that in February 2013, one of Mr. Poitra's co-workers, Etoi Montgomery, advised Ms. Marchant of certain allegations regarding Plaintiff's interactions with a female co-worker. *See* Complaint, at ¶23. Ms. Marchant allegedly placed Mr. Poitra on administrative leave without first interviewing the Plaintiff. An

---

[2]On its face, Defendants' motion does not seek relief that could be considered dispositive. I am aware of Tenth Circuit precedent holding that "[m]otions not designated on their face as one of those excepted in [§ 636(b)(1)(A)] are nevertheless to be treated as such when they have an identical effect." *First Union Mortgage Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000), citing *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1462 (10th Cir. 1988). However, the motion before the court does not seek a dispositive sanction and Plaintiff's counsel has not suggested that striking Ms. Ortega from her client's witness list would effectively preclude Mr. Poitra from proceeding with his claims at trial.

investigation of those allegations subsequently was conducted by Susan Abeyta, Theresa Hafner and Lee Renow, DPA Human Resources employees. *Id.* at ¶32.  Ms. Marchant ultimately made the decision to terminate Mr. Poitra and he received a letter to that effect on April 2, 2013, in which Ms. Marchant stated that Plaintiff had "engaged in inappropriate workplace conduct and then failed to fully cooperate with the District's investigation of the allegations against you."  *Id.* at ¶41.

The Complaint named as defendants Denver County School District No. 1 and Anita Marchant in her individual capacity and as a DPS employee, and asserted six claims for relief. The First Claim alleged tortious interference with contract by Defendant Marchant.  The Second Claim was brought under 42 U.S.C. § 1983 and asserted a violation of Plaintiff's liberty and property interests under the Fourteenth Amendment.  The Third and Fifth Claims asserted race discrimination and gender discrimination, respectively, under Title VII.  The Fourth Claim alleged retaliation in violation of 42 U.S.C. § 2000e-3(a), and the Sixth Claim asserted a violation of the Age Discrimination in Employment Act.

On June 13, 2014, this court held a Fed. R. Civ. P. 16(b)(1) scheduling conference and entered a case management order establishing certain pretrial deadlines.  At the scheduling conference, counsel indicated that Fed. R. Civ. P. 26(a)(1) disclosures had been made on or before June 6, 2014, pursuant to a deadline that I set in an April 3, 2014 Minute Order (doc. #5).[3]

---

[3]Mr. Poitra's initial disclosures identified 26 individuals "likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings."  These disclosures are notable for at least two reasons.  First, Plaintiff's counsel applied the initial disclosures standard found in Rule 26(a)(1)(A) of the Colorado Rules of Civil Procedure, rather than Fed. R. Civ. P. 26(a)(1)(A)(i), which requires the disclosing party to identify those individuals with discoverable information that the disclosing party may use to support its claims or defenses.  Second, for 21 of the identified individuals, Plaintiff's counsel provided the same

The court adopted, without change, the December 6, 2014 discovery cutoff proposed by the parties, as well as their proposed dispositive motion deadline of January 15, 2015.  Consistent with Fed. R. Civ. P. 30(a)(2)(A)(i), each party was permitted to take ten depositions without leave of court.  After I extended the deadline at the request of the parties, discovery closed in this case on January 5, 2015.  Defendants moved for summary judgment on February 18, 2015.[4]

On April 30, 2015, the parties submitted their proposed Rule 16(d) Final Pretrial Order. This court held a final pretrial conference on May 5, 2015.  The District Court's Instructions for Preparation of Final Pretrial Order require each party to separately list their witnesses "who will be present at trial" and those witnesses "who may be present at trial if the need arises."  For both "will call" and "may call" witnesses, the designating party also must provide "a short statement as to the nature and purpose of the witness' testimony."  In the Final Pretrial Order submitted by the parties, Mr. Poitra's counsel listed 22 "will call" witnesses, 18 "may call" witnesses, and one "will call" expert witness who will "offer testimony and expert opinions regarding the economic

---

generic description: that the named individual "may have information regarding Plaintiff and his claims, as well as the workplace environment."  Four other individuals were simply described as "character witness[s] for Plaintiff."  *Cf. Cohen v. Public Service Company of Colorado*, No. 13-cv-00578-WYD-NYW, 2015 WL 6446948, at *4 (D. Colo. Oct. 26, 2015) (noting that Rule 26(a)(1) "does not contemplate generic disclosures, nor does it permit a party to provide an undifferentiated list of possible witnesses").

[4]The district court granted in part and denied in part Defendants' Motion for Summary Judgment with an Order (doc. #55) entered on September 11, 2015.  The court entered judgment in favor of Defendants as to Plaintiff's retaliation, due process and tortious interference claims, but denied Defendants' motion with respect to the claims of discrimination based on race, gender and age.

losses suffered by Plaintiff."[5]  Defendants listed 4 "will call witnesses"[6] and 7 "may call" witnesses.

In the Final Pretrial Order submitted to the court, Defendants noted their objection to the following individuals included on Plaintiff's "will call" witness list, "because such witnesses have never been disclosed by either party:"  Rebecca Ortega, James Woods, Ben Gallegos, Kao Vang, Pastor Paul Burleson, Robert Canada, and James Purfield.  Plaintiff's counsel conceded that these individuals, including Ms. Ortega, had not been formally disclosed previously.  *See* Courtroom Minutes/Minute Order (doc. 46).  Counsel also suggested that she would be revisiting her witness list and would likely pare that list down.  While the court heard from each side on the matter of the previously undisclosed witnesses, I emphasized that I was not privy to all discovery in this case and was not making any ruling because no motion challenging the inclusion of these individuals on Plaintiff's witness list had been filed.

On May 8, 2015, Judge Daniel entered a Minute Order (doc. #48), setting this matter for a five-day jury trial to commence on January 11, 2016, and setting a final trial preparation conference for December 17, 2015.  Defendant DPS filed the instant motion for sanctions on November 16, 2015, less than two months before trial.

## ANALYSIS

This court, in *Sender v. Mann*, 225 F.R.D. 645 (D. Colo. 2004), discussed at length the standards governing Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure.  That discussion

---

[5]On December 15, 2015, Mr. Poitra filed his final witness list, consisting of  9 "will call" witnesses, 4 "may call" witnesses, and one expert witness.

[6]Each of Defendants' "will call" witnesses were also included in Mr. Poitra's list of "will call" witnesses.

bears repeating.  Rule 26(a)(1) provides, in pertinent part, that a party must disclose, without awaiting a formal discovery request, "the name . . . of each individual likely to have discoverable information – *along with the subjects of that information – that the disclosing party may use to support its claims or defenses*, unless the use would be solely for impeachment."  *See* Rule 26(a)(1)(A)(i) (emphasis added).  Rule 26(a)(1)(A)(i) does not require the identification of every individual that may know something about the matter in dispute.  Rather, the disclosure obligation is limited to those individuals who are likely to have discoverable information "that the disclosing party may use" to support its claims or defenses.  Rule 26(a)(1)(A)(I) also requires the disclosing party to identify "the subjects of the information" that a disclosed individual may provide.

As I explained in *Sender*, 225 F.R.D. at 650, Rule 26(a)(1) disclosures are designed to accelerate the exchange of basic information and "help focus the discovery that is needed, and facilitate preparation for trial or settlement."  *See* Advisory Committee Notes to 1993 Amendments to Fed.R.Civ.P. 26(a).  To that end, initial disclosures should provide an opposing party "with information essential to the proper litigation of all relevant facts, to eliminat[e] surprise, and to promot[e] settlement."  *Windom v. FM Industries, Inc.*, No. 8:00CV580, 2003 WL 21939033, at *2 (D. Neb. Aug. 12, 2003) (quoting *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 145 F.R.D. 92, 94 (S.D. Iowa 1992)).  *See also Ollier v. Sweetwater Union High School District*, 768 F.3d 843, 863 (9th Cir. 2014) ("An adverse party should not have to guess which undisclosed witnesses may be called to testify."); *City and County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003) (noting that Rule 26(a) seeks to "'accelerate the exchange of basic information' that is 'needed in most cases to prepare for trial

or make an informed decision about settlement'"").  More to the point, initial disclosures should be "complete and detailed," and should "give the opposing party information as to the identification and location of persons with knowledge so that they can be contacted in connection with the litigation."  *Crouse Cartage Co. v. National Warehouse Investment Co.*, No. IP02-071CTK, 2003 WL 23142182, at *1 (S.D. Ind. Jan. 13, 2003) (quoting *Biltrite Corp. v. World Road Markings, Inc.*, 202 F.R.D. 359, 362 (D. Mass. 2001)).  "Indicating briefly the general topics on which such persons have information should not be burdensome, and will assist other parties in deciding which depositions will actually be needed."  *See* Fed. R. Civ. P. 26(a) advisory committee's note to 1993 amendment.  Further reflecting the important role that initial disclosures play in the discovery process, Fed. R. Civ. P. 26(g)(1)(A) provides that an attorney or party, by signing initial disclosures, certifies to the best of their "knowledge, information, and belief formed after a reasonable inquiry" that the disclosure is "complete and correct as of the time it is made."

In short, the Rule 26(a)(1) disclosure requirements should "be applied with common sense in light of the principles of Rule 1, keeping in mind the salutary purposes that the rule is intended to accomplish.  The litigants should not indulge in gamesmanship with respect to the disclosure obligations."  *See* Fed. R. Civ. P. 26(a) advisory committee's note to 1993 amendment.  *See also Fitz, Inc. v. Ralph Wilson Plastics Co.*, 174 F.R.D. 587, 589 (D.N.J. 1997) (Rule 26 disclosure requirement should be applied with common sense).  Counsel who make the mistake of treating Rule 26(a)(1) disclosures as a technical formality, rather than as an efficient start to relevant discovery, do their clients no service and necessarily risk the imposition of sanctions.

Fed. R. Civ. P. 26(e) imposes a self-executing obligation to supplement initial disclosures to the extent their disclosures are "incomplete or incorrect." *See A PDX Pro Co., Inc. v. Dish Network Service, LLC*, __ F.R.D. __, No. 12-cv-01699-RBJ-CBS, 2015 WL 7717199, at *5 n.5 (D. Colo. Nov. 30, 2015). *See also Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1226 (10th Cir. 2015). As the court noted in *Dayton Valley Investors, LLC v. Union Pacific R. Co.*, No.2:08-cv-00127-ECR-RJJ, 2010 WL 3829219, at *3 (D. Nev. Sept. 24, 2010), Rule 26(e) "creates a duty to supplement, not a right" and does not "create a loophole" to be exploited by a party to its advantage. There is, however, no affirmative duty to supplement initial disclosures "if the additional or corrective information" has "otherwise been made known to the other parties during the discovery process or in writing." *See* Fed. R. Civ. P. 26(e)(1)(A).

It is undisputed that Plaintiff Poitra did not include Ms. Ortega in his initial Rule 26(a)(1) disclosures or in any written supplemental disclosure provided to Defendants prior to the final pretrial conference on May 5, 2015. In opposing Defendant's motion to strike Ms. Ortega, Plaintiff's counsel points to specific deposition testimony from Mr. Poitra and Ms. Marchant as satisfying her client's supplementation obligation. Resolution of the pending motion for sanctions thus turns on the application of Rule 26(e)(1)(A).

Defense counsel deposed Mr. Poitra on December 16, 2014. That deposition lasted for approximately four hours, during which Plaintiff's counsel asked a total of 12 questions; none of which referenced Ms. Ortega or prompted a response that mentioned Ms. Ortega. The passages referring to Ms. Ortega are found on all or portions of 18 pages of a 161-page deposition transcript. Without quoting verbatim from Mr. Poitra's deposition transcript, the references and testimony regarding Ms. Ortega address the following subjects.

Mr. Poitra testified that he had discussed his case with Ms. Ortega and others, but also conceded that it "has probably been a year" since he spoke last to Ms. Ortega.  According to Plaintiff, Ms. Ortega was interested in knowing whether he "was going to pursue a case" and expressed her opinion that he should.  Mr. Poitra recalled that Ms. Ortega "felt she may have her own case and she wasn't too happy [at DPA]," but she also "said she had a fear of saying anything because she felt she may lose her job."

In response to defense counsel's questions, Mr. Poitra testified that Ms. Ortega had been one of  "his supports in vending," but that he had not made the decision to hire her and initially believed she "was [not] going to be a good fit for my team, but yet I was forced to make her part of my team."  Expanding on that response, Mr. Poita explained that Ms. Ortega "always complains about DPS" and that she did not hide the way she felt.

Mr. Poitra described Ms. Ortega's attitude toward Anita Marchant.  According to Plaintiff, Ms. Ortega "didn't like Anita at all" and "would complain about Anita."  Mr. Poitra recalled that Ms. Ortega would tell him to  "watch" his back and describe Ms. Marchant as "really controlling."  In response to a question later in his deposition, Mr. Poitra seemed to suggest that "Anita was aware of" how Ms. Ortega felt about her.

During his deposition, Mr. Poitra mentioned that when Ms. Ortega applied for his old position as a vending route driver, she "apparently went to HR and she came up with this thing that I was somebody who didn't want to work with a woman."  Mr. Poitra opined that Ms. Ortega made this comment because "she was trying to get my old position," but then acknowledged that Ms. Ortega "didn't feel the same about me after she got to know me."

Ms. Marchant made only one reference to Ms. Ortega during her January 5, 2015

deposition.  That entire colloquy between Plaintiff's counsel and Ms. Marchant reads as follows:

Q:  Sitting here today, you can't recall that you've terminated any female from any position other than job abandonment?

A:  That I can recall, correct.

Q:  Okay.  Do you recall a situation where Rebecca Ortega complained about an individual named Brian Williams?

A:  Vaguely.

Q:  What do you recall about that situation?

A:  If I recall correctly, she had made some statements about him harassing her when he and she were working up at Hilltop prior to the merger of the two warehouses, which I was not a party of.  And I also turned that over to human resources for investigation.

Q:  And what was the result of that investigation?

A:  I don't recall.  I believe it was that it was unfounded.  Her allegation was unfounded.

Q:  Was Mr. Williams – what race is Mr. Williams?

A:  He's black.  And she also made the same allegations against Mr. Poitra and it was investigated and it was also found to be unfounded.  And it was handled the same way.  I turned it over to human resources for investigation and they gave me the details surrounding it and then we made the decision of whether we felt it was founded or not.[7]

Approximately four months after Ms. Marchant's deposition and the discovery cutoff,

Plaintiff's counsel listed Ms. Ortega in the Final Pretrial Order as a "will call" witness who "will

testify regarding her observation of Plaintiff in the workplace, the discipline policies and

practices, her observations of Ms. Marchant and the interaction with Mr. Montgomery, Mr.

---

[7]Although Mr. Poitra argues that his deposition testimony should have alerted defense counsel to Ms. Ortega's potential importance as a trial witness, his own counsel apparently felt that Ms. Ortega merited little discussion during Ms. Marchant's deposition.

Worden."

In suggesting that her client complied with his supplementation obligations under Rule 26(e), Plaintiff argues that "[b]oth parties and their counsel were present when Ortega . . . [was] discussed in the context of this case, not simply as [an individual] who might now something but within the specific factual parameters relevant to this case."[8]  (*See* doc. 62 at 4 of 5).   Plaintiff's counsel further contends that Ms. Ortega "became relevant as discovery progressed, and [her] involvement with DPS management became apparent."  (*See id.*).  It is difficult to reconcile these sweeping generalizations with the very specific, and limited, nature of Mr. Poitra's and Ms. Marchant's references to Ms. Ortega.  Moreover, there does not appear to be any direct nexus between the specific passages from the Poitra and Marchant depositions cited in Plaintiff's Response to Motion for Sanctions and the description of Ms. Ortega's anticipated trial testimony in the Final Pretrial Order.  Neither Mr. Poitra nor Ms. Marchant were ever asked during their deposition to discuss or describe Ms. Ortega's "observations of Plaintiff in the workplace" or Ms. Ortega's "observations of Ms. Marchant;" indeed, one wonders how Mr. Poitra or Ms. Marchant could even address or describe Ms. Ortega's personal "observations."  Mr. Poitra did not mention Mr. Montgomery or Mr. Worden in connection with his testimony relating to Ms. Ortega.

Reduced to its essence, Plaintiff's argument maintains that a party's duty to supplement

---

[8]Plaintiff's counsel also contends that her supplementation obligation should be qualified by the fact that Ms. Ortega is a DPS employee who has readily been accessible to defense counsel.  *But see Cohen v. Public Service Company of Colorado*, No. 13-cv-00578-WYD-NYW, 2015 WL 6446948, at *5 (D. Colo. Oct. 26, 2015) ("A party is not relieved of its obligations under Rule 26(a)(1) simply because the Defendant can obtain the information from another source.").

Rule 26(a)(1)(A)(i) disclosures is satisfied if an individual that may have relevant information is mentioned, even in passing, during a deposition.  That argument is predicated on an incomplete reading of Rule 26(a)(1)(A)(i) and would effectively undermine the very purpose for initial disclosures.  Rule 26(a)(1)(A(i) requires more than simply a laundry list of potentially knowledgeable individuals.  Rather, a party is duty-bound to disclose those individuals "likely to have discoverable information" that the disclosing party "may use to support its claims or defenses."  To complete the disclosure obligation, the party must also identify "the subjects of [the discoverable] information" that the putative witness may provide.

Rule 26(e) must be construed and applied against the backdrop of the very specific requirements set forth in Rule 26(a)(1)(A)(i).  Indeed, the elements of Rule 26(e) are quite clear. First, to trigger the duty to supplement, a party's initial disclosures must, in some respect, be incomplete or incorrect.  Here, that element is not in dispute, for Plaintiff concedes that Ms. Ortega was not identified in Mr. Poitra's initial disclosures or in any subsequent written supplement.  Second, Rule 26(e)(1)(A) requires that supplemental disclosures occur "in a timely manner."  *Cf. United States v. Guidant Corp.,* No. 3:03-0842, 2009 WL 3103836, at *4 (M.D. Tenn. Sept. 24, 2009) (noting that while Rule 26(e) does not define "in a timely manner," that provision must be applied in accordance with the particular facts and circumstances of each case; supplementation must occur "in a fashion that will allow [the opposing party] to conduct meaningful discovery and avoid undue delay in the progress of [the] case").  *See also Reed v. Washington Area Metropolitan Transit Authority,* No. 1:14cv65, 2014 WL 2967920, at *2 (E.D. Va. July 1, 2014) ("Making a supplemental disclosure of a known fact witness a mere two days before the close of discovery . . . is not timely by any definition.").  And finally, a reasonable

interpretation of Rule 26(e)(1)(A) and its reference to "incomplete or incorrect" disclosures presumes that the "additional or corrective information . . . otherwise made known . . . during the discovery process" will provide the functional equivalent of the information required under Rule 26(a)(1)(A). *Cf. L-3 Communications Corp. v. Jaxon Engineering & Maintenance, Inc.*, No.10-cv-02868-MSK-KMT, 2015 WL 5117792, at *8 (D. Colo. Sept. 1, 2015) ("To satisfy the 'made known' requirement, a party's collateral disclosure of the information that would normally be contained in a supplemental discovery response must be in such form and of such specificity as to be the functional equivalent of a supplemental discovery response; merely pointing to places in the discovery where the information was mentioned in passing is not sufficient.").

As the court noted in *Auraria Student Housing at the Regency, LLC v. Campus Village Apartments, LLC,* No. 10-cv-02516-WJM-KLM, 2014 WL 2933189, at *2 (D. Colo. June 30, 2014), "knowledge of the existence of a person is distinctly different from knowledge that the person will be relied upon as a fact witness." *Cf. Jama v. City and County of Denver*, 304 F.R.D. 289, 297 (D. Colo. 2014) ("[B]ecause the purpose of the disclosure under Rule 26(a) was to inform Denver of which individuals *the Plaintiffs* believed had pertinent information, what the information was and how to contact the individual, Denver's identification of individuals in response to discovery requests did not relieve Plaintiffs of the obligation of disclosing the individuals *they thought* had useful information.") (emphasis added).

While discovery is, by necessity, an iterative process, Plaintiff's interpretation of the "otherwise made known" phrase has the potential to convert the Rule 26(e) supplementation requirement into a "whack-a-mole" game. *Cf. Cohlmia v. Ardent Health Services, LLC*, 254 F.R.D. 426, 433 (N.D. Okl. 2008) (observing that Rule 26(e) "does not give license to sandbag

one's opponent"). Constrained by the numerical limit on depositions imposed under Rule 30(a)(2) and by proportionality factors expressly incorporated in Fed. R. Civ. P. 26(b)(1), opposing counsel is confronted with a real dilemma if the mere mention of an individual's name during a deposition discharges a party's disclosure and supplementation obligations. A risk-averse party must either expend time and money taking a deposition that could prove worthless, or risk surprise at trial. *Cf. Sender*, 255 F.R.D. at 656 (Rule 26(e) "disclosures must be sufficiently detailed to allow [the opposing party] to make intelligent decisions regarding how [it] will efficiently use the limited number of depositions permitted under the Rule 16 scheduling order").

Ms. Ortega illustrates this dilemma. Mr. Poitra indicated during his deposition that he had not spoken to Ms. Ortega within the last year, thus leaving open the possibility that Ms. Ortega's dissatisfaction with her situation at DPS had diminished or had been resolved completely. The prospect that Ms. Ortega might testify for Plaintiff at trial was less than certain given her purported fear "of saying anything because she felt she may lose her job." Finally, Mr. Poitra and Ms. Marchant both suggested that Ms. Ortega's credibility as a witness might be compromised by her prior apparently unfounded allegations against Mr. Poitra and another DPS employee. *Cf. Johnson v. School District 1*, No. 12-cv-02950-MSK-MEH, 2014 WL 983521, at *3 (D. Colo. Mar. 13, 2014) (suggesting that a party has no reason to depose a witness whom the other side did not disclose; "[d]efendants' argument that [p]laintiff knew about all 10 administrators prior to their disclosure does not excuse their failure to disclose").

The facts in this case are distinguishable from those in *Llewellyn v. Allstate Home Loans, Inc.*, 795 F. Supp. 2d 1210 (D. Colo. 2011), *aff'd in part, rev'd in part on other grounds*, 711

15

F.3d 1173 (10th Cir. 2013).  In the latter case, the defendants moved to strike a declaration offered by the plaintiff in response to the defendants' motion for summary judgment.  That declaration had been signed by the plaintiff's accountant, an individual who had not been formally disclosed under Rule 26(a)(1) as a fact witness or disclosed in the plaintiff's discovery responses.  In denying the motion to strike, the court noted that the accountant had been a topic of questioning during the plaintiff's deposition and that defense counsel specifically had asked the plaintiff about "a produced document that had been previously created [by the accountant] for purposes of the litigation."  The court emphasized that defense counsel "knew during [p]laintiff's deposition that [the accountant] had discoverable information related to [p]laintiff's purported damages." *Id.* at 1220.[9]  In contrast, Mr. Poitra's deposition testimony could be reasonably interpreted to suggest that Ms. Ortega was disinclined to play any role at trial.

But it is the practical effect of counsel's interpretation of Rule 26(e) that is most troubling.  Rule 26(a)(1) and (e)(1) impose an affirmative obligation to provide disclosures that are complete and correct as of the time they are made.  The importance of that disclosure obligation is reflected in the certification requirement imposed on counsel under Rule 26(g).  A passing and perhaps oblique reference to an individual during a deposition should not presumptively equate to a Rule 26(a)(1)(A)(i) disclosure that reflects counsel's "knowledge, information and belief formed after a reasonable inquiry."  Similarly, the phrase "otherwise

---

[9]This ruling seems consistent with the Advisory Committee's view that Rule 26(e) is satisfied if "supplemental or corrective information . . . has been otherwise made known to the parties in writing or during the discovery process, as when *a witness* not previously disclosed is identified during the taking of a deposition." *See* Rule 26(e) advisory committee's note to 1993 amendment (emphasis added).  There was nothing in Mr. Poitra's or Ms. Marchant's deposition testimony, and certainly nothing in the questioning by Plaintiff's counsel, that would have reasonably put Defendants on notice that Ms. Ortega would be a witness in this action.

made known to the other parties during the discovery process" should not be broadly applied to circumvent Rule 26(g) or give a party "license" to engage in ambush or supplement their disclosures almost by happenstance. *Cf. Bath and Body Works Brand Management, Inc. v. Summit Entertainment, LLC.*, No. 11 Civ. 1594 (GBD)(JLC), 2012 WL 5278528, at *2 (S.D.N.Y. Oct. 23, 2012).[10]

For the foregoing reasons, I find that Mr. Poitra failed to comply with his disclosure obligations under Rule 26(a)(1)(A)(i), as well as his duty to supplement those disclosures in a timely manner pursuant to Rule 26(e)(1)(A). The issue then becomes whether striking Ms. Ortega from Plaintiff's witness list is an appropriate remedy for those transgressions. That analysis requires me to address the second "wrong" implicated by the pending motion; that is, Defendant's protracted delay in seeking relief from Mr. Poitra's untimely disclosure.

Rule 37(c)(1) of the Federal Rules of Civil Procedure states that where a party fails to make a disclosure required by Rule 26(a) or Rule 26(e)(1), that party may not use at trial any witness or information not so disclosed, unless the court determines that the failure to disclose was substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1). The non-moving party has the burden of showing that they were substantially justified in failing to comply with Rule 26(a)(1). *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 680 (D. Kan. 1995). While Rule 37(c)(1) is

---

[10]During the hearing on December 16, 2015, Plaintiff's counsel suggested that Ms. Ortega's belated disclosure was appropriate under Fed. R. Civ. P. 26(a)(3), which requires a party to identify at least 30 days before trial the name "of each witness . . . the party expects to present and those it may call if the need arises." This provision should not be viewed as an acceptable alternative for complete and timely disclosures under Rule 26(a)(1). Indeed, Rule 26(a)(3) makes clear, by its very terms, that the disclosure of a final witness list on the eve of trial, is not a substitute for initial disclosures, but rather is "[i]n addition to the disclosures required by Rule 26(a)(1) and (2)." Any other interpretation would effectively revive the "trial by ambush" philosophy that Rule 26(a)(1) and (e)(1) were meant to prevent.

written in mandatory terms, it also vests the court with discretion to impose "other appropriate sanctions" in addition to or in lieu of an order striking witnesses or evidence not properly disclosed.  *See Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (recognizing that Rule 37(c) vests broad discretion with the trial court). *See also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (noting that the district court's discretion should be given particularly wide latitude in imposing sanctions under Rule 37(c)(1)); *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 34 (1st Cir. 2001) (holding that district courts have broad discretion in meting out Rule 37(c) sanctions for Rule 26 violations).

Sanctions should not be imposed under Rule 37(c)(1) where the failure to disclose was substantially justified.  For purposes of Rule 37(c)(1), a party's failure to disclose is substantially justified where the non-moving party has a reasonable basis in law and fact, and where there exists a genuine dispute concerning compliance.  *Nguyen v. IBP, Inc.*, 162 F.R.D. at 680.  In this particular case, I cannot find that Plaintiff's counsel's position has a reasonable basis in law or fact.  Indeed, it appears that counsel's initial disclosures are predicated upon the wrong version of Rule 26(a)(1)(A).

Colorado's version of Rule 26(a)(1)(A) harkens back to Fed. R. Civ. P. 26(a)(1)(A) as it was adopted in 1993.  *See* Fed. R. Civ. P. 26(a)(1)(A) advisory committee's note to 1993 amendment.  The Advisory Committee explained in 1993:

> Subparagraph (A) requires identification of all persons who, based on the investigation conducted thus far, are likely to have discoverable information relevant to the factual disputes between the parties.  All persons with such information should be disclosed, whether or not their testimony will be supportive of the position of the disclosing party.  As officers of the court, counsel are expected to disclose the identity of those persons who may be used by them as

witnesses or who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the other parties.

Thus, the Advisory Committee seemly distinguished between the disclosures required by the then-current version of Rule 26(a)(1)(A) and counsel's separate responsibility, as an officer of the court, to disclose the identities of their prospective witnesses.

Viewed in that light, the 1993 version of Rule 26(e)(1) makes more sense. When the duty to disclose broadly encompasses any "individual likely to have discoverable information relevant to the factual disputes between the parties," the mere mention of an individual during a deposition might suffice for purpose of Rule 26(e). The Advisory Committee apparently did not revisit that language in Rule 26(e) when Rule 26(a)(1)(A) was revised in 2000 to no longer require a party "to disclose witnesses . . . whether favorable or unfavorable, that it does not intend to use." *See* Fed. R. Civ. P. 26(a)(1), advisory committee's note to 2000 amendment.[11]

Plaintiff's counsel's misapplication of Rules 26(a)(1)(A)(i) and (e)(1)(A) becomes more glaring in light of her own actions. Counsel indicated during the recent hearing that she did not learn of Ms. Ortega's existence until very shortly before or during her client's deposition on December 16, 2014. Counsel also acknowledged that she personally interviewed Ms. Ortega after Mr. Poitra's deposition and close to the discovery cutoff. Defendant's motion for summary judgment made only passing reference to Ms. Ortega and she did not figure prominently in Mr.

---

[11]The Advisory Committee did recognize that "[a]s case preparation continues, a party must supplement its disclosures when it determines that it may use a witness . . . that it did not previously intend to use." Given this anomaly in the evolution of Rules 26(a)(1), trial judges and parties may wish to reconsider how or to what extent they rely upon the "otherwise made known" exception in Rule 26(e)(1)(A). *See* Fed. R. Civ. P. 26(a)(1), advisory committee's note to 2000 amendment.

Poitra's response brief and attached exhibits.  Ms. Ortega was not affirmatively disclosed as a

"will call" witness until on or about April 30, 2015, nearly four months after the close of

discovery.  In short, I cannot find that Plaintiff's counsel's actions were substantially justified.

"Failure to comply with the mandate of [Rule 26(a)( and (e)] is harmless when there is no

prejudice to the party entitled to the disclosure."  *Id.*

> The determination of whether a Rule 26(a) violation is justified or harmless is
> entrusted to the broad discretion of the district court.  A district court need not
> make explicit findings concerning the existence of a substantial justification or
> the harmlessness of a failure to disclose.  Nevertheless, the following factors
> should guide its discretion: (1) the prejudice or surprise to the party against whom
> the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the
> extent to which introducing such testimony would disrupt the trial; and (4) the
> moving party's bad faith or willfulness.

*Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.*, 170 F.3d at 993.

Applying the *Woodworker's* factors to the record before the court, I cannot find that

Plaintiff's non-compliance was harmless.  *Cf. Lintz v. American General Finance, Inc.*, No. 98-

2213-JWL, 1999 WL 619045, *6 (D. Kan. August 2, 1999) (noting that non-compliance is

harmless only when there is no prejudice to the opposing party).  In weighing the element of

prejudice or surprise, the court must again take heed of the purposes underlying Rule 26(a)(1).

"The importance of lay . . . witness disclosures and the harms resulting from a failure to disclose

need little elaboration."  *Saudi v. Valmet-Appleton, Inc.*, 219 F.R.D. 128, 134 (E.D. Wis. 2003).

The belated disclosure of witnesses, particularly after the close of discovery, is antithetical to the

objectives underlying Rule 1; *i.e.*, the just, speedy, and inexpensive determination of every

action.  *Cf. D.L. v. Unified School District # 497*, 270 F. Supp.2d 1217, 1241 (D. Kan. 2002)

(finding prejudice to the extent that plaintiffs' failure to make required Rule 26(a)(1) disclosures

undermined defendants' ability to conduct discovery as to the non-disclosed witnesses), *aff'd in*

*part, vacated in part, and remanded on other grounds,* 392 F.3d 1223 (10ᵗʰ Cir. 2004).

As to the second *Woodworker's* factor, Plaintiff's counsel disputes any claim of prejudice by arguing that defense counsel attended Mr. Poitra's and Ms. Marchant's depositions and was free to informally interview any DPS employee.  That argument is less than convincing given the significant number of DPS employees; defense counsel should not be required to expend her time and her client's money chasing down interviews that may be wholly superfluous.  *See Jones v. Thompson*, 996 F.2d 261, 264 (10ᵗʰ Cir. 1993) (recognizing that delay and mounting attorneys fees can equate to prejudice).  In theory, Defendant also could ameliorate any prejudice by taking Ms. Ortega's deposition on the eve of trial.  However, that same "remedy" presumably would be available in any case where Rules 26(a)(1) and (e)(1)(A) are violated.  As a practical matter, however, that "remedy" would afford Defendant little time to assimilate Ms. Ortega's deposition testimony and re-calibrate their trial preparation as necessary.  More to the point, the default remedy of last-minute depositions threatens to undermine the very objectives underlying the disclosure and supplementation requirements.[12]  *Cf. Transclean Corp. v. Bridgewood Services, Inc.*, 77 F. Supp.2d 1045, 1064 (D. Minn. 1999) (noting while a continuance and reopening of discovery might alleviate some of the prejudice caused by non-disclosure under Rule 26(a), "such a remedy would wreak its own distinctive prejudice," by unnecessarily prolonging the pretrial process and increasing the expense of litigation), *aff'd in part and vacated in part on other grounds*, 290 F.3d 1364 (Fed. Cir. 2002).

As to the fourth *Woodworker's* factor, Defendant has not offered any evidence that would

---

[12]Conversely, I find that striking Ms. Ortega may not have a material adverse effect on Plaintiff's case, since the description of her anticipated testimony seems to closely match many of the topics that Mr. Poitra's other "will call" witnesses are expected to cover.

demonstrate that Mr. Poitra's failure to comply with Rule 26(a)(1)(A)(i) and Rule 26(e)(1) was the product of bad faith or willfulness.  However, Plaintiff's good faith alone may not be enough to overcome the other three factors.  *Cf. Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 955 (10th Cir. 2002).   Mr. Poitra should not be permitted to ignore his disclosure obligations throughout the discovery period and then avoid sanctions simply by claiming his deficiencies were not willful.

It is the third *Woodworker's* factor that presents the Gordian knot in this case.  Trial will begin in this case on January 11, 2016; that trial date was set on May 8, 2015.  The rapidly approaching trial date substantially reduces the court's ability to fashion an appropriate remedy under Rule 37(c).  To suggest that striking Ms. Ortega as a witness is not appropriate simply because her deposition can be taken at the eleventh hour or because the trial can be reset would effectively reward Plaintiff's non-compliance.

However, the court cannot overlook Defendant's delay in filing the instant motion.  During the discovery hearing on December 16, 2015, defense counsel conceded that she had raised the issue of Plaintiff's surprise trial witnesses back in April when she and Plaintiff's counsel were preparing the proposed Final Pretrial Order.  Defense counsel raised the issue with this court during the final pretrial conference on May 5, 2015, and at that time I advised counsel that the court could not decide this issue in the absence of a written motion.  No motion was immediately forthcoming, even after Judge Daniel set a trial date of January 11, 2016.  Defense counsel concedes that she did not re-raise this issue with Mr. Poitra's counsel until November, justifying that delay on the grounds that Plaintiff's counsel had indicated she would be narrowing her list of witnesses.  Apparently, defense counsel felt that she would simply wait

impassively for several months while Mr. Poitra fine-tuned his witness list.  Under a different set

of facts, Defendant's delay in filing its motion for sanctions might be outcome determinative.

*Compare Adams v. Cline Agency, Inc.*, No. 10-cv-02758-WJM-KLM, 2013 WL 244696, at *3

(D. Colo. June 5, 2013) (suggesting that any prejudice claimed by defendants as a result of

plaintiffs' untimely disclosure was mitigated when defendants declined to seek discovery of such

evidence despite sufficient knowledge that it existed; the court found that "[d]efendants bear

some responsibility for their asserted lack of 'adequate opportunity to prepare a defense for any

such undisclosed evidence'").  In a future case, Defendant's passivity in the face of an apparent

discovery violation might inure to its detriment.

Defense counsel contends that Mr.Poitra's untimely designation of Ms. Ortega as a trial

witness left DPS with no time to respond to that surprise.  Having allowed that passage of time,

DPS now seeks to exploit that reality to its advantage.  Counsel must have realized that the court

has the discretion under Fed. R. Civ. P. 16(b)(4) to modify any pretrial deadline upon a showing

of good cause. The belated and unanticipated disclosure of a trial witness would seem to fall

easily within the good cause requirement.  It is not clear whether Defendant's failure to file a

timely Rule 37(c) motion was the product of inattention or a calculated strategy.  Under either

explanation, the net effect was to severely constrain the range of possible remedies for Plaintiff's

violation of Rules 26(a)(1)(A)(i) and (e)(1)(A).  Counsel should not presume the court will be so

willing to accept this result in the future.

While I am loath to ignore Defendant's dilatory actions, in the end that failure is trumped

by  Plaintiff's disclosure omissions and his own unjustified delay.  I find that Mr. Poitra did not

disclose Ms. Ortega as required under Rule 26(a)(1)(A)(i) and did not properly comply with his

supplementation obligation under Rule 26(e)(1)(A).  Plaintiff's counsel's approach to initial

disclosures is mirrored by her rather cavalier approach to designating trial witnesses.  On April

30, 2015, Plaintiff's counsel disclosed 41 witnesses, including the seven individuals deemed

objectionable by DPS.  Over the next several months, counsel agreed to drop three of the

contested witnesses.  Now on the eve of trial, Mr. Poitra has reduced his list of witnesses by

more than half and dropped six of the contested individuals.  A final witness list, like initial

disclosures, should not become an uncertain or moving target.  Both the final pretrial order and

initial disclosures are designed to encourage "self-editing and . . reasonably fair disclosure to the

court and opposing parties of [counsel's] real trial intentions."  *Cf. Monfore v. Phillips*, 778 F.3d

849, 851 (10th Cir. 2015) (counsel's reluctance to make hard decisions should not come at the

expense of or increase the burdens of the opposing party); *Steele v. Colorado Springs Early*

*Colleges*, No. 14-cv-03926-KLM, 2015 WL 8479809, at *1 (D. Colo. Dec. 10, 2015) ("The

Final Pretrial Order serves the purpose of ensuring 'the economical and efficient trial of every

case on its merits without chance or surprise.' ") (quoting *Hull v. Chevron U.S.A, Inc.*, 812 F.2d

584, 588 (10th Cir. 1987)).  There comes a time when an opposing party is entitled to make

informed decisions and to rely on the statements (or silence) of the other side.  If the risk or

consequences of indecision should fall on one side or the other, it should be the party with the

affirmative disclosure obligation.  Any other resolution bodes ill for the "just, speedy, and

inexpensive" determination of every action.

    After carefully considering the facts in this case, the applicable Rules, the *Woodworker's*

factors and the pertinent case law, I hereby grant Defendant's motion for sanctions and strike

Ms. Ortega as a substantive or merits witness in this action.[13]  I will not award Defendant DPS

the reasonable attorneys fees and costs it incurred in filing the instant motion, for such an award

might be construed as tacit approval for what can only be considered a very dilatory request for

relief.

Dated this 21st day of December, 2015.

BY THE COURT:


 s/ Craig B. Shaffer
United States Magistrate Judge

---

[13]As a caveat to this decision, I note that Rule 26(a)(1)(A)(I) does not require a party to disclose an individual who will be used at trial "solely for impeachment."  Because my powers of clairvoyance not so refined and I cannot profess to know the nuances of the parties' trial strategies, nothing in this ruling precludes Ms. Ortega from serving in the limited role as an impeachment witness.